## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

(1) SHANE NORRID, individually and
on behalf of all others similarly situated,
(2) KERMIT MICHAEL TROXEL,
individually and on behalf of all others
similarly situated,
(3) KEVIN HARTMAN, individually
and on behalf of all others similarly
situated,
(4) TIM HYERS, indivually and on
behalf of all others similarly situated,
(5) CHRISTOPHER LYNN WILLIAMS,
individually and on behalf of all others
similarly situated,
(6) CODIE SHREVE, individually and
on behalf of all others similarly situated,
(7) STEVEN ENGLAND, individually
and on behalf of all others similarly
situated,
(8) TAYLOR BRANTLEY, individually
and on behalf of all others similarly
situated,

        Plaintiffs,

v.

(1) D.A.R.P., INC., an Oklahoma not for
profit corporation,
(2) RAYMOND JONES,
(3) HENDREN PLASTICS, INC., an
Arkansas for profit corporation,
(4) R&R ENGINEERING CO., INC.,
an Oklahoma for profit corporation,
(5) GLENN E. WHITMAN,
(6) SIMMONS FOODS, INC., an
Arkansas for profit corporation, and
(7) WESTERN ALLIANCE, INC.,
(formerly JER-CO INDUSTRIES, INC.,
an Oklahoma for profit corporation, and
(8) MID-AMERICA CABINETS, INC.,
an Arkansas for profit corporation,

        Defendants.

CASE NO. 17-cv-401-RAW

**MOTION TO DISMISS FIRST AMENDED COMPLAINT OF
DEFENDANT WESTERN ALLIANCE, INC.,
(FORMERLY JER-CO INDUSTRIES, INC.) AND BRIEF IN SUPPORT**

COMES NOW Defendant Western Alliance, Inc., (formerly Jer-Co Industries, Inc.) (hereinafter "Western Alliance"), and hereby files this Motion to Dismiss First Amended Complaint pursuant to Fed.R.Civ.Proc. 12(b)(6).

Respectfully submitted,

Sean H. McKee, OBA #14277
Jessica L. Johnson, OBA #31851
**BEST & SHARP**
One West Third Street, Suite 900
Williams Center Tower I
Tulsa OK 74103
(918) 582-1234 (Telephone)
(918) 585-9447 (Facsimile)
smckee@bestsharp.com
jjohnson@bestsharp.com
*Attorneys for Defendant,*
*Western Alliance, Inc.,*

December 22, 2017

**TABLE OF CONTENTS**

I.    INTRODUCTION AND PLAINTIFFS' ALLEGATIONS ................................................2

II.    PLAINTIFFS' CLAIMS .................................................................................................5

III.   ARGUMENTS AND AUTHORITIES.............................................................................5

      A.    MOTION TO DISMISS STANDARDS ...............................................................5

      B.    PLAINTIFFS' CLAIMS UNDER THE FAIR LABOR STANDARDS
           ACT (COUNTS I AND II) FAIL AS A MATTER OF LAW BECAUSE
           THEY CANNOT SHOW THAT THEY WERE "EMPLOYEES" OF THE
           DEFENDANTS AT THE TIME OF THE D.A.R.P. PROGRAM .........................6

      C.    PLAINTIFFS' INVOLUNTARY SERVITUDE CLAIM (COUNT III)
           AND RELATED "CONSPIRACY" CLAIM (CLAIM IV) UNDER 18
           U.S.C. §1595 FAIL BECAUSE WESTERN ALLIANCE DID NOT
           UNLAWFULLY COERCE HARTMAN TO WORK .........................................12

      D.    PLAINTIFFS' TVPRA CLAIMS ARE BARRED BY *HECK V.*
           *HUMPHREY*, 512 U.S. 477 (1994) .......................................................17

      E.    PLAINTIFFS' RICO CLAIMS (COUNT VI AND COUNT VII) FAIL AS
           A MATTER OF LAW ...................................................................................18

      F.    PLAINTIFFS' INVOLUNTARY SERVITUDE CLAIMS (COUNT II
           AND IV) AND RICO CLAIMS (COUNTS VI AND VII) SHOULD BE
           DISMISSED UNDER RULE 19 FOR FAILURE TO JOIN AN
           INDISPENSABLE PARTY, NAMELY, THE STATE OF OKLAHOMA.........22

      G.    PLAINTIFFS' OKLAHOMA PROTECTION OF LABOR ACT CLAIM
           (COUNT XIII) AGAINST WESTERN ALLIANCE IS WITOUT MERIT .........23

IV.   CONCLUSION..............................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

### <u>Case Law</u>

*Amaya v. Bregman*,
   149 F.Supp.3d 1312 (D.N.M. 2015) ....................................................................18, 19

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)........................................................................................21, 22

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937 (2009).....................................................................6

*Atlas Pile Driving Co. v. DiCon Fin. Co.*,
   886 F.2d 98 (10th Cir. 1989) ...............................................................................18

*Bacchus Industr., Inc. v. Arvin Industries, Inc.*,
   939 F.2d 887 (10th Cir. 1991) ..............................................................................21

*BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*,
   194 F.3d 1089 (10th Cir. 1999) ............................................................................20

*Beck v. Prupis*,
   529 U.S. 494 (2000)...........................................................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................6

*Bliss v. Affiliated Pathologists, P.A.*,
   2017 WL 4343127 (E.D. Okla. 2017)....................................................................24

*Brooks v. George County, Miss.*,
   84 F.3d 157 (5th Cir. 1996) .................................................................................13

*Coen v. SemGroup Energy Partners G.P., LLC*,
   2013 OK CIV APP 75, 310 P.3d 657 ....................................................................24

*Crow v Penry*,
   102 F.3d 1086 (10th Cir. 1996) ............................................................................16

*Deck v. Engineered Laminates*,
   349 F.3d 1253 (10th Cir. 2003) ............................................................................18

*Doe v. Roe*,
   756 F.Supp. 353 (N.D. Ill. 1991) ..........................................................................19

*Dolla v. Unicast Co.*,
    930 F. Supp. 202 (E.D. Pa. 1996) ...................................................................13

*Doty v. Elias*,
    733 F.2d 720 (10th Cir. 1984) .........................................................................7

*Erikson v. Pawnee County Bd.*,
    263 F.3d 1151 (10th Cir. 2001) .......................................................................6

*Franks v. Oklahoma State Indus.*,
    7 F.3d 971 (10th Cir. 1993) ........................................................................7, 11

*Gee v. Pacheco*,
    627 F.3d 1178 (10th Cir. 2016) .......................................................................6

*Giffin v. Hickenlooper*,
    549 Fed. Appx. 823 (10th Cir. 2013)...............................................................13

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989).....................................................................................21

*Hall v. Bellmon*,
    935 F.2d 1106 (10th Cir. 1991) .......................................................................6

*Heck v. Humphrey*,
    512 U.S. 477 (1994)........................................................................16, 17, 25

*Holmes v. Sec. Investor Prot. Corp.*,
    503 U.S. 258 (1992).....................................................................................21

*Kansas v. Collins*,
    656 F.3d 1210 (10th Cir. 2011) .....................................................................15

*Kearney v. Dimanna*,
    195 Fed. Appx. 717 (10th Cir. 2006)...........................................................19, 20

*Lawson v. Engleman*,
    67 Fed.Appx. 524 (10th Cir. 2003)..................................................................17

*Maio v. Aetna, Inc.*,
    221 F.3d 472 (3d Cir. 2000)..........................................................................19

*Monarch Normandy Square Partners v. Normandy Square Assoc. Ltd. Partnership*,
    817 F. Supp. 908 (D. Kan. 1993) ....................................................................19

*Muchira v. Al-Rawaf*,
    850 F.3d 605 (4th Cir. 2017) ...................................................................12, 13

*Nicastro v. Clinton*,
    882 F. Supp. 1121 (D.D.C. 1995) ...............................................................7

*Northern Arapaho Tribe v. Harnsberger*,
    697 F.3d 1272 (10th Cir. 2012) ...............................................................22, 23

*Parris v. Harris*,
    45 F.3d 383 (10th Cir. 1995) ...................................................................16

*Resolution Trust Corp v. Stone*,
    998 F.2d 1534 (10th Cir. 1993) ...............................................................21

*Reves v. Ernst & Young*,
    113 S. Ct. 1163 (1993) ...............................................................................20

*Robbins v. Wilkie*,
    300 F.3d 1208 (10th Cir. 2002) ...............................................................18

*Steirer v. Bethlehem Area Sch. Dist.*,
    987 F.2d 989 (3[d] Cir. 1993)....................................................................13

*Tal v. Hogan*,
    453 F.3d 1244 (10th Cir. 2006) ...............................................................22

*Tilden v. State*,
    2013 OK CR 10, 306 P.3d 554 .................................................................17

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
    471 U.S. 290 (1985).....................................................................................8

*U.S. v. Turkette*,
    452 U.S. 576 (1981).....................................................................................18

*Univ. of Md. At Baltimore v. Peat, Marwick*,
    996 F.2d 1534 (3[d] Cir. 1993)....................................................................20

*Vanskike v. Peters*,
    974 F.2d 806 (7th Cir. 1992) ...................................................................7, 11

*Vaughan v. Aegis Commc'ns Grp.,LLC*,
    49 F.Supp.3d 613 (W.D. Mo. 2014) .........................................................12

*Vaughn v. Phoenix House Programs of New York*,
    2015 WL 567 1902 (S.D.N.Y. 2015) ...........................................................9, 11

*Walling v. Portland Terminal Co.*,
    330 U.S. 148 (1947) ....................................................................................8

*Watson v. Graves*,
    909 F.2d 1549 (5th Cir. 1990) ...................................................................13

*Williams v. Strickland*,
    87 F.3d 1064 (9th Cir. 1996) ...............................................................8, 11

## **Other**

Fed. R. Civ. P. 8(a)(2) ...............................................................................5

18 U.S.C. § 1589 ....................................................................5, 12, 16

18 U.S.C. § 1590 ....................................................................5, 12, 14

18 U.S.C. § 1594 ....................................................................5, 12, 16

18 U.S.C. § 1594(b) ................................................................5, 14, 16

18 U.S.C. § 1595 ..............................................................................12

18 U.S.C. § 1961 ...........................................................5, 17, 19, 20, 21

18 U.S.C. § 1962 ........................................................5, 17, 18, 19, 22

18 U.S.C. § 1964(c) ..........................................................................18

22 U.S.C. § 7101(a) ..........................................................................12

29 U.S.C. § 203(e)(1) ..........................................................................7

29 U.S.C. § 206(a) .......................................................................5, 6, 7

29 U.S.C. § 207(a) .......................................................................5, 6, 7

22 O.S. § 1080 ...........................................................................14, 17

40 O.S. § 161 ............................................................................5, 23

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) SHANE NORRID, individually and on behalf of all others similarly situated, )<br>(2) KERMIT MICHAEL TROXEL, individually and on behalf of all others similarly situated, )<br>(3) KEVIN HARTMAN, individually and on behalf of all others similarly situated, )<br>(4) TIM HYERS, individually and on behalf of all others similarly situated, )<br>(5) CHRISTOPHER LYNN WILLIAMS, individually and on behalf of all others similarly situated, )<br>(6) CODIE SHREVE, individually and on behalf of all others similarly situated, )<br>(7) STEVEN ENGLAND, individually and on behalf of all others similarly situated, )<br>(8) TAYLOR BRANTLEY, individually and on behalf of all others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>(1) D.A.R.P., INC., an Oklahoma not for profit corporation, )<br>(2) RAYMOND JONES, )<br>(3) HENDREN PLASTICS, INC., an Arkansas for profit corporation, )<br>(4) R&R ENGINEERING CO., INC., an Oklahoma for profit corporation, )<br>(5) GLENN E. WHITMAN, )<br>(6) SIMMONS FOODS, INC., an Arkansas for profit corporation, and )<br>(7) WESTERN ALLIANCE, INC., (formerly JER-CO INDUSTRIES, INC., an Oklahoma for profit corporation, and )<br>(8) MID-AMERICA CABINETS, INC., an Arkansas for profit corporation, )<br><br>Defendants. ) | CASE NO. 17-cv-401-RAW |

1

## MOTION TO DISMISS OF DEFENDANT WESTERN ALLIANCE, INC., (FORMERLY JER-CO INDUSTRIES, INC.) AND BRIEF IN SUPPORT

COMES NOW Defendant Western Alliance, Inc., (formerly Jer-Co Industries, Inc.) (hereinafter "Western Alliance"), and hereby files this Motion to Dismiss pursuant to Fed.R.Civ.Proc. 12(b)(6). Only one Plaintiff – Kevin Hartman – has any connection to Western Alliance and, as discussed below, his claims are without legal or factual support. Hartman admittedly came to Western Alliance because of a valid order from an Oklahoma District Court regarding his probationary status for violation of Oklahoma criminal laws. Hartman has asserted no factual allegations that would support any inference that he was unlawfully coerced, abused or threated *by* Western Alliance to *remain with* Western Alliance within the meaning of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §1589. Further, Hartman was not an "employee" of Western Alliance and the FLSA does not apply. And, Plaintiffs' thread-bare RICO allegations are borderline frivolous. For the reasons that follow, Plaintiffs' claims against Western Alliance, Inc., should be dismissed for failure to state a claim for relief.

## I.     INTRODUCTION AND PLAINTIFFS' ALLEGATIONS

Plaintiffs are individuals who were charged with violating the criminal laws of the State of Oklahoma and were placed on probation for said violations. (Dkt. #2 at ¶4; Dkt. #39 at ¶¶41, 45, 52, 56, 60, 67, 77, 81). As a result of their violation of said laws, they were subject to certain criminal penalties defined by Oklahoma statutory law, including but not limited to incarceration and/or fines. In the original Complaint, Plaintiffs agreed that, with respect to these varied criminal violations, they received a "court sentence" or entered into a "plea deal" related to their involvement with an Oklahoma drug court, and/or "voluntarily" requested in-patient drug treatment during the course of their probation. (Dkt. #2 at ¶4). Oklahoma State District Court orders were entered as a result of these criminal proceedings. (*Id.*).

2

In their First Amended Complaint, they have removed allegations concerning the precise role of Oklahoma courts in the sentencing procedures. Nevertheless, the First Amended Complaint continues to recognize, as it must, that Plaintiffs participated in the D.A.R.P. program as a result of a court-ordered alternative sentencing regime regarding their probationary status for violating Oklahoma criminal laws. (*E.g.*, Dkt. #39 at ¶¶41, 45, 52, 56, 60, 67, 77, 81).

As a necessary consequence of these court orders, Plaintiffs became affiliated with the D.A.R.P. program, which had the purpose of providing treatment, rehabilitation and recovery services to these Plaintiffs (most of whom had been charged with drug-related offenses). (Dkt. #39 at ¶¶104-105). In their First Amended Complaint, Plaintiffs claim that the D.A.R.P. program was not effective in providing such treatment (or that it offers "little to no meaningful treatment") and that D.A.R.P.'s primary purpose is to provide "below-market-rate labor" to various corporate-defendants. (Dkt. #39 at ¶¶104, 108). Plaintiffs complain about the "dangerous" working conditions of these corporate defendants, (Dkt. #39 at ¶108), and allege that D.A.R.P. was "intended" to "use coercion, the threat of physical restraint," – i.e., the prospect that Plaintiffs could go to prison for their admitted violations of Oklahoma law – and "the abuse and threatened abuse of the law or legal process to maintain a malleable workforce who could be threatened with prison if they refused to work for free." (Dkt. #39 at ¶109).

Plaintiffs' First Amended Complaint adds RICO claims. (Dkt. #39 at ¶¶112-115). The RICO allegations are essentially the same as the involuntary servitude allegations. Plaintiffs allege that D.A.R.P. is an "enterprise" which provides labor to the corporate defendants and that the "enterprise" involves interstate commerce. (Dkt. #39 at ¶112). Plaintiffs state that D.A.R.P.'s president (Defendant Jones) is responsible for "devising and implementing DARP policy, a substantial component of which is forced labor and involuntary servitude, racketeering activities

under 18 U.S.C. §1861."  (Dkt. #39 at ¶112).  Then, Plaintiffs allege that the corporate-defendants "conspire" with Jones to "engage in this conduct" by executing agreements for the provision of "involuntary labor" – again, asserting that the court-ordered drug rehabilitation program was improper because it included payments to D.A.R.P. for "work" performed by the Plaintiffs.

**Plaintiff Hartman.**  The only Plaintiff with any connection to Western Alliance is Keven Hartman.  (Dkt. #39 at ¶¶51-54).  The First Amended Petition has reduced the allegations related to Hartman to four (4) paragraphs.  (*Id.*).  Hartman was on probation for various drug offenses in Stephens County, Oklahoma, in 2015.  (Dkt. #39 at ¶52).  Plaintiff's initial Complaint indicated that Hartman "voluntarily requested to go to drug treatment" and it was "recommended he go to D.A.R.P. by his Stephens County probation officer."  (Dkt. #2 at ¶40).  The First Amended Complaint now states:  "Struggling with acute addiction, Hartman requested to go to drug treatment.  His Stephens County probation officer recommended DARP."  (Dkt. #39 at ¶52).  Plaintiff Hartman complains that he was "made to stand for long hours six days per week, for free," while working for Western Alliance.  (Dkt. #39 at ¶53).

The initial Complaint indicated that Hartman experienced drug withdrawal while working at Western Alliance, (Dkt. #2 at ¶42), that he received "little to no" drug treatment, and eventually "left D.A.R.P.," noting that his probation was revoked when he got behind on his court fines and fees.  (Dkt. #2 at ¶¶44-46).  As a result, he "went to prison" and has "anxiety and nightmares as a result of the time he spent at D.A.R.P."  (Dkt. #2 at ¶46).  The First Amended Complaint has modified these allegations, and simply alleges that, at the D.A.R.P. facility – *not* at Western Alliance – Hartman allegedly lived in "cramped quarters," experienced bed bugs, and was fed "spoiled or otherwise unsaleable chicken five nights per week."  (Dkt. #39 at ¶43).  Again, Hartman is the *only* identified Plaintiff with any connection to Western Alliance.

## II.      PLAINTIFFS' CLAIMS

Plaintiffs have pursued seven (7) claims against Defendant Western Alliance:

**Count I**:  Failure to Pay Minimum Wages in Violation of the Fair Labor Standards Act, 29 U.S.C. §206(a)

**Count II**:  Failure to Pay Overtime Wages in Violation of Fair Labor Standards Act, 29 U.S.C. §207(a).

**Count III:**  Involuntary Servitude in Violation of the Trafficking Victims Protections Reauthorization Act, 18 U.S.C. § 1589, 1594(a) (hereinafter "TVPRA").

**Count IV**:  Conspiracy to Violate the TVPRA, 18 U.S.C. §1594(b).

**Count VI:**  Violation of the RICO Act, 18 U.S.C. §§ 1961, 1962(d)

**Count VII:**  Violation of the RICO Act (Association-in-Fact Enterprise), 18 U.S.C. §1961, 1962(c).

**Count XIII:**  Unpaid Wages and Failure to Pay Minimum Wages in Violation of the Oklahoma Protection of Labor Act, 40 O.S. §161, *et seq.*

Plaintiffs seek unpaid wages, liquidated damages, statutory penalties, compensatory and punitive damages, injunctive relief, attorney fees, costs and other relief.  (Dkt. #39 at p. 46-47).

## III.     ARGUMENTS AND AUTHORITIES

### A.       MOTION TO DISMISS STANDARDS

The Federal Rules of Civil Procedure require a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complainant is not required to assert "detailed factual allegations," but must allege more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009); *Gee v. Pacheco*, 627 F.3d 1178, 1184 (10th Cir. 2016) (quoting *Iqbal*). Accordingly, a complaint must offer more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007).  The factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* (internal citation omitted).  A complaint is insufficient if it merely tenders "naked assertions" devoid of "further factual enhancement." *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557); *see also Erikson v. Pawnee County Bd.*, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (holding conclusory allegations are insufficient to survive a motion to dismiss) and *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based").

**B.    PLAINTIFFS' CLAIMS UNDER THE FAIR LABOR STANDARDS ACT (COUNTS I AND II) FAIL AS A MATTER OF LAW BECAUSE THEY CANNOT SHOW THAT THEY WERE "EMPLOYEES" OF THE DEFENDANTS AT THE TIME OF THE D.A.R.P. PROGRAM**

Plaintiffs have pursued two claims for violation of the Fair Labor Standards Act (i.e., Plaintiffs' Counts I and II).  Plaintiffs claim Defendants failed to pay minimum wages in violation of 29 U.S.C. §206(a), and failed to pay overtime wages in violation of 29 U.S.C. §207(a).  Both claims are premised on the assumption that Plaintiffs – who were criminal offenders who entered the D.A.R.P. program for rehabilitation purposes and per valid orders of various Oklahoma courts – were "employees" of the Defendants during their participation in the D.A.R.P. program and were therefore entitled minimum wage and overtime wage protections of the FLSA

To prevail on an FLSA wage claim, a plaintiff must show that he or she was an "employee" of the defendant.  29 U.S.C. §§206(a), 207(a).  The Act defines an "employee" as "any individual employed by an employer," 29 U.S.C. §203(e)(1), and "employ" as "suffer or permit to work," *id.* at §203(g).  Because the definition of "employee" is so vague, courts have developed several tests to determine whether a worker is covered by the FLSA.  *See Nicastro v. Clinton*, 882 F. Supp. 1121, 1130 (D.D.C. 1995).  Some of these tests involve complex, multifactorial inquiries such as

those differentiating employees from independent contractors, *e.g., Doty v. Elias*, 733 F.2d 720, 723 (10th Cir. 1984), while others are straightforward, such as those distinguishing prisoners or students, *e.g., Franks v. Oklahoma State Indus.*, 7 F.3d 971, 972 (10th Cir. 1993) (holding that "economic reality" test not intended to apply to work performed in the prison by a prison inmate and that minimum wage standard of FLSA not applicable to "prison labor").

However, regardless of the test employed, one of the basic requirements of any employment relationship under the FLSA is a "bargained for" exchange of labor for compensation, or a "remunerative relationship." *See Vanskike v. Peters*, 974 F.2d 806, 809 (7th Cir. 1992). There is no doubt that Plaintiffs' relationship with the Defendants had "some elements commonly present in an employment relationship," *see Franks, supra*, but that relationship arose not because there was a "bargained for" exchange of labor for compensation but because Plaintiffs were criminal offenders who entered the D.A.R.P. program for rehabilitation and as an alternative to prison. At no point in the First Amended Complaint do Plaintiffs claim that they were *promised* compensation, nor do Plaintiffs allege that they *expected* to receive any compensation. Hartman, for instance, went into the D.A.R.P. program (1) per Court Order, (2) for "drug treatment," and (3) pursuant to the recommendation of a "probation officer." (Dkt. #39 at ¶52). The purpose of Hartman's affiliation with Western Alliance was to satisfy the terms of his probation (and for drug treatment related to the very crimes to which he pled guilty), and *not* for purposes of employment.

The "remunerative relationship" requirement has a basis in Supreme Court jurisprudence. In *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 (1985) (citing *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947)), the Court stated that "[a]n individual who, 'without promise or expectation of compensation, but solely for his personal purposes . . . work[s] in activities carried on by other persons either for their pleasure of profit,' is outside the sweep of

7

the Act." In *Walling,* for instance, the Court found that individuals being "trained" as railroad yard brakemen were not "employees" because, during the training period, the individuals did not contemplate compensation and no employment relationship was otherwise established. The Court held that the FLSA's definitions "obviously were not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Walling,* 330 U.S. at 153. The fact that compensation might be in the form of "benefits rather than cash" is immaterial; what matters is that the putative employee have an "expectation of compensation." *See Alamo*, 471 U.S. at 302.

Two cases have particular relevance to the present case. In *Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1996), the plaintiff brought an FLSA claim after participating in a rehabilitative work therapy program organized by the Salvation Army. The Salvation Army offered participants room, board, work therapy and spiritual and religious counseling for periods up to six months. Participants were required to sign admittance statements which indicated they were not employees of the facility; they were required to apply for general assistance and food stamps and turn those benefits over to the facility to offset the cost of their room and board. Once admitted, the *Williams* plaintiff participated in the rehabilitation program; attended in-house counseling; attended alcohol-abuse programs and church services; and engaged in "work therapy on a full-time basis." The "work-therapy" included refinishing furniture and sorting food and clothing donations.

The district court found that the plaintiff was not an "employee" for purposes of the FLSA. *Id.* at 1065. The Court of Appeals for the Ninth Circuit affirmed. *Id.* at 1066. The Court stated that "Williams had neither an express nor an implied agreement for compensation with the Salvation Army and thus was not an employee." *Id.* The Court noted that he signed a statement

indicating he had no employment relationship with the Salvation Army. *Id.* In addition, there was no implied agreement for compensation:

> Williams did not apply to the personnel department of the Salvation Army, but rather was admitted to the Army's rehabilitation program. Williams indicated on his application for admission, intake interview form, and intake medical report that he suffered from drinking problems and was in need of treatment.
> . . .
> Williams's relationship with the Salvation Army was solely rehabilitative. This fact, not subject to reasonable dispute, distinguishes this case from Alamo where the associates work contemplated both rehabilitation and compensation. Williams's work therapy was not performed in exchange for in-kind benefits, but rather was performed to give him a sense of self-worth, accomplishment, and enabled him to overcome his drinking problems and reenter the economic marketplace.
> .  .  .
> The facts place this case within the holding of *Walling* where the Supreme Court stated that the FLSA does not cover a person "who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit."

*Id.* at 1067.

Likewise, in *Vaughn v. Phoenix House Programs of New York*, 2015 WL 567 1902 (S.D.N.Y. 2015), the Court addressed a criminal offender's claims who had "agreed to participate in an in-patient drug treatment program in lieu of a prison sentence." *Id.* at 1. A court "ordered" that he go to the facility for 18-24 months and, after completing the inpatient treatment, he was required to "work on the books" and attend six months of outpatient services. *Id.* If he completed the program, the underlying charges would be dismissed, but if he violated the terms of the agreement, he could have gone to prison. Part of the treatment at the facility include working on "kitchen duty" for various unpaid shift work. *Id.* The plaintiff stated that he agreed to perform the work because the alternative was "going to jail, no ifs, ands, or buts about it." *Id.* He was ultimately transferred to a different location, and participated in various classes and work programs. *Id.* at 2. He eventually reported to the Court at the end of his residency, and expected

to be released, but the Court refused to release him because he had no complied with the "job function" at the facility.  *Id.* at 3.

With respect to his FLSA claim, he argued that "his work duties at Phoenix House had no therapeutic value and merely provided unpaid labor for the facility that did not benefit Plaintiff or the other residents."  *Id.*  The Court rejected his FLSA claim, finding that "Plaintiff does not qualify as a covered employee."  *Id.* at 7.  The Court noted:

> Like the plaintiffs in *Doyle*, Vaughn did not agree to participate in the Phoenix House treatment program for the purpose of receiving monetary compensation; indeed nowhere in his Amended Complaint or opposition brief does he suggest that expected compensation played any role in his decision to enter the program. Rather, Plaintiff agreed to participate in the T.A.S.C./ D.T.A.P. program in order to resolve the criminal charges against him . . . Furthermore, although Plaintiff contends that it was Phoenix House and not he who benefited from the work assignments, he acknowledges that had he successfully completed the program, the charges against him would have been dismissed without a prison sentence. . . It thus appears that the "principal benefit" of Plaintiff's participation in the program was to him and his assertions to the contrary are implausible.

*Id.* at 8.

These cases are directly on point for purposes of determining whether Plaintiffs should be considered "employees" under the FLSA.  Here, the First Amended Complaint contains <u>no facts</u> indicating that Plaintiffs' participation in the D.A.R.P. program was pursuant to any type of express or implied agreement for compensation.  Rather, Plaintiffs were all sent to D.A.R.P. as part of a <u>court-ordered drug treatment program</u>.  (Dkt. #39 at ¶¶41, 45, 52, 56, 60, 67, 77, 81). They entered that program as an <u>alternative to prison</u> for various drug offenses and other criminal violations.  Similar to *Vaughn,* they entered the program "in order to resolve the criminal charges against" them.  Similar to the rehabilitation program in *Williams*, the D.A.R.P. program is a model based on both work therapy and spiritual/religious counseling.  Plaintiffs now desire to challenge the efficacy of those programs/counselings, but the mere fact that they dispute the purpose, quality,

desirability and/or effectiveness of the D.A.R.P. program does not transform them into "employees" within the meaning of the FLSA.  The principal purpose of the program was <u>not</u> to allow Plaintiffs to receive monetary compensation, but to respond to Plaintiffs' admitted drug addictions, admitted violations of Oklahoma law, and/or admitted desire to avoid prison time.

Further, as shown above, Plaintiff Hartman is the only defendant with any connection to Defendant Western Alliance.  (Dkt. #39 at ¶¶51-54).  Hartman admits that the purpose of his request to be a part of the D.A.R.P. program was to assist with his "acute addiction" and as a part of his "probation" status.  (Dkt. #39 at ¶52).  He claims he received "little to no drug treatment" and that "rather than received the drug treatment he needed" he was forced to work without pay.  (Dkt. #39 at ¶53).  Plaintiff Hartman makes <u>no allegations</u> that he considered his relationship with Western Alliance to be an employment relationship, or that he expected any type of compensation for the services he provided.  Rather, he acknowledges that his participation in the program was for rehabilitation and for purposes of meeting his probation requirements.  (Dkt. #39 at ¶¶52-54).

For those reasons, Plaintiff's FLSA claims (Count I and Count II) against Western Alliance fail as a matter of law, because Plaintiff Harman was not an "employee" of Defendant Western Alliance.[1]

---

[1] The same outcome obtains if the Court considers an analogous context:  prison labor.  Although prisoners are often required (or allowed) to perform work during their time in prison, such labor almost never gives rise to an employment relationship.  This is because prison labor often "does not stem from any . . . bargained-for exchange of labor for consideration."  *Vanskike v. Peters*, 974 F.2d 806, 809 (7th Cir. 1992); *see also Franks v. Oklahoma State Indus.*, 7 F.3d 971, 972 (10th Cir. 1993) (noting that prison labor has some elements of employment relationship, but "[t]he primary purpose of [the] association is incarceration, not employment.").  The same is true here.  Plaintiffs have identified no facts supporting any type of bargained-for exchange of labor for consideration.  Plaintiffs were in the D.A.R.P. program for rehabilitation purposes and for purposes of satisfying probation obligations related to their admitted violation of Oklahoma criminal laws.

### C.   PLAINTIFFS' INVOLUNTARY SERVITUDE CLAIM (COUNT III) AND RELATED "CONSPIRACY" CLAIM (CLAIM IV) UNDER 18 U.S.C. §1595 FAIL BECAUSE WESTERN ALLIANCE DID NOT UNLAWFULLY COERCE HARTMAN TO WORK

Plaintiffs have also pursued a human trafficking (involuntary servitude) claim and a related "conspiracy" claim.  (Dkt. #39 at ¶¶14-15).  Section 1589 of Title 18 of the U.S. Code makes it a crime to (1) **knowingly** (2) **provide or obtain** (3) the **labor or services** of a person, (4) by any one of, or by any combination of, the following forms of coercion:

(1)   by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2)   by means of serious harm or threats of serious harm to that person or another person;

(3)   by means of the abuse or threatened abuse of law or legal process; or

(4)   by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589.  In addition, "attempts" to violate §1589 are punishable in the same manner as a completed violation, as are "conspiracies" to violate §1589.  18 U.S.C. §1594.  An individual who is a victim of a violation of this statute may bring a "civil action" against the "perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has been engaged in an act in violation of this chapter)" and may recover "damages and reasonable attorney fees."  18 U.S.C. §1595(a).

The purpose of the TVPRA "is to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominately women and children, to ensure just and effective punishment of traffickers."  *See Vaughan v. Aegis Commc'ns Grp.*, LLC, 49 F.Supp.3d 613, 622 (W.D. Mo. 2014) (internal quotation marks omitted); 22 U.S.C. §7101(a).  Section 1589 "was passed to implement the Thirteenth Amendment against slavery or involuntary servitude."  *See Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017).  The Act is intended to "effectuate

12

the constitutional prohibitions against slavery and involuntary servitude, by criminalizing the act of coercing persons into providing labor and services against their will and providing a civil remedy to the victims of such actions."  *Id.* at 624.  It is axiomatic that "[t]he Thirteenth Amendment expressly **permits** 'involuntary servitude' as 'punishment for crime whereof the party shall have been duly convicted.'"  *See Giffin v. Hickenlooper*, 549 Fed. Appx. 823, 827 (10th Cir. 2013) (emphasis added).  Further, "[w]here a plaintiff has a choice . . . there can be no involuntary servitude, even if that choice is a painful one."  *See Dolla v. Unicast Co.*, 930 F. Supp. 202, 206 (E.D. Pa. 1996); *see also Watson v. Graves*, 909 F.2d 1549, 1552 (5th Cir. 1990) ("When the employee has a choice, even though it is a painful one, there is no involuntary servitude. A showing of compulsion is thus a prerequisite to proof of involuntary servitude.") (citation and internal quotation marks omitted).[2]  The TVPRA is concerned with "improper threats or coercion" as identified in the Act; it does not penalize "permissible warnings of adverse but legitimate consequences."  *See Muchira*, 850 F.3d at 624.

Though not entirely clear, the First Amended Petition appears to assert that Defendants violated all four subsection of §1589, by subjecting Plaintiffs to "forced, unpaid labor."  (Dkt. #39 at ¶150).  Plaintiffs claim that Defendants obtained said "forced labor" through "serious harm, threats of serious harm, threats of physical restraint, and abuse or threatened abuse of law or legal

---

[2] Further, "it is not involuntary servitude to offer prisoners an option of participating in a work-release program, even though the consequence of not working and remaining in jail may be 'painful.'"  *Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989, 1000 (3d Cir. 1993). "[A] prisoner can choose to stay in jail rather than enter the work-release program. The fact that these choices may not be appealing does not make the required labor involuntary servitude." *Id.*; *see also Brooks v. George County, Miss.*, 84 F.3d 157, 162–63 (5th Cir. 1996) (pretrial detainee given choice between confinement in his cell and work as a trusty, which permitted him some freedom of movement within the jail, was not coercive and thus not involuntary servitude).  Rather, the plaintiff must show that there was no conceivable means of avoiding the continued service or confinement. *Id.*

process." (Dkt. #39 at ¶151). The only "threat" or "force" identified is the alleged obligation of Plaintiffs to "work long hours in often extreme conditions for free under the threat of incarceration if Plaintiffs and putative class members refused." (Dkt. #39 at ¶152). Even though Plaintiffs were associated with the D.A.R.P. program via Court-order and as a result of their admitted violation of Oklahoma (or other) law, Plaintiffs claim that Defendants "kept" them in a condition of "financial and legal vulnerability so that they had no choice but to labor for Defendants." (Dkt. #39 at ¶ 152). Plaintiffs' related "conspiracy" claim (Count IV) is premised on the same allegations: that Defendants "conspired" and took "affirmative steps" to subject Plaintiffs to "forced, unpaid labor" in violation of 18 U.S.C §1594(b). (Dkt. #39 at ¶163). In addition, Plaintiffs complain that Defendants knowingly "recruited, harbored, transported, and/or obtained Plaintiffs for labor and services" in violation of laws prohibiting involuntary servitude and/or forced labor, in violation of 18 U.S.C. §1590, and/or knowingly financially benefiting from a "venture" which violated these laws. (Dkt. #2 at ¶¶120, 121).

The allegations in this case are woefully insufficient, both legally and factually, to state a claim for violation of TVPRA. The TVPRA was not designed to prohibit state courts from using alternative sentencing mechanisms to address (and sanction) conduct that has been criminalized by State law. In this case, Hartman was on probation for violating Oklahoma law. (Dkt. #39 at ¶52). He was also struggling with drug addiction, and voluntarily requested to go to drug treatment; his "probation officer" recommended that he go to the D.A.R.P program. (Dkt. #39 at ¶). A state court approved of this process.[3] So, Hartman specifically had a choice: either accept

---

[3] Plaintiff Hartman has pled no facts indicating that he appealed the Oklahoma district court probation order (or any subsequent order revoking his probation), or otherwise complained about his sentence via any type of post-conviction relief (via Oklahoma's Post-Conviction Procedure Act, 22 O.S. §1080).

the sentence and program offered through the Oklahoma state court system, or go to prison (or face some other punitive action from the State of Oklahoma for his admitted violation of Oklahoma law).  He chose to go through the D.A.R.P. program.  Plaintiffs generically complain about "threats" of incarceration, if they did not successfully complete the D.A.R.P. program; but this is not the type of unlawful coercion encompassed by the TVPRA. Rather, threats of incarceration were "permissible warnings of adverse but legitimate consequences" of Hartman's admitted violations of Oklahoma law.[4]

The First Amended Complaint is deficient for another reason:  it contains <u>no allegations</u> linking this Defendant – Western Alliance – to any conduct made impermissible by the TVPRA. To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must offer specific factual allegations to support each claim . . . [A] plaintiff must offer sufficient factual allegations to 'raise a right to relief above the speculative level.'"  *See Kansas v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).  The Court should "disregard all conclusory statements of law and consider whether the remaining factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Id.*  The only specific allegations against Western Alliance are contained on pages 14 of the First Amended Complaint with respect to Plaintiff Hartman.  However, Plaintiff does not include *any* allegations regarding *any* improper or coercive conduct on the part of Western Alliance.  The Complaint simply alleges that Hartman was required to work at the Western Alliance facility and was "forced to stand for long hours six days per week, for free."  (Dkt. #39 at ¶53).  However, nothing in the Complaint shows that *Western Alliance* forced Hartman to remain in the D.A.R.P.

---

[4] Indeed, and ironically, far from being *coerced* to join the program or stay in the program, Hartman conceded in the original Complaint that, when he was sufficiently dissatisfied with the program, he "left" D.A.R.P.  (Dkt. #2 at ¶46).  And, as a "legitimate consequence" of his conduct thereafter (i.e., his failure to pay fines and fees), his "probation was revoked" and he "went to prison."  (*Id.*).

program, or made any statements to Hartman about his criminal sentences, or threatened him with "serious harm" or "physical restraint" or "abuse of law or legal process," or otherwise engaged in any type of coercion contemplated by §1589 of the TVPRA.  Further, any threat of "incarceration" was not a function of Plaintiff's participation in the D.A.R.P. program, but a legitimate consequence of his violation of Oklahoma state criminal laws.

The TVPRA claim against Western Alliance is factually unsupportable, and without a basis in law.  For the same reasons, the TVPRA conspiracy claim (§1594(b)) and TVPRA claim under §1594(a) for an "attempted" violation of §1589 fail, since there was no underlying violation of §1589.  *E.g., Beck v. Prupis*, 529 U.S. 494, 501 (2000) (noting that historically "conspiracy was not an independent cause of action, but was only the mechanism for subjecting co-conspirators to liability when one of their member committed a tortious act").

### D.   PLAINTIFFS' TVPRA CLAIMS ARE BARRED BY *HECK V. HUMPHREY*, 512 U.S. 477 (1994)

Even assuming *arguendo* Plaintiffs could state a claim against Western Alliance for violation of the TVPRA, dismissal would still be required pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994).  In that case, the U.S. Supreme Court stated:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus,

*Heck,* 512 U.S. at 486–87.  The *Heck* doctrine applies to any federal tort or civil rights action that would necessarily imply the invalidity of a plaintiff's conviction or sentence.  *See Parris v. Harris*, 45 F.3d 383, 384 (10th Cir. 1995) (applying *Heck* to FTCA claims); *Crow v Penry*, 102 F.3d 1086,

1087 (10th Cir. 1996) (applying *Heck* to *Bivens* claims); *Lawson v. Engleman*, 67 Fed.Appx. 524, 526 n.1 (10th Cir. 2003) (applying *Heck* to §1985 claims).

Defendant Western Alliance adopts and incorporates herein the arguments previously made by Defendant Simmons Foods, Inc., concerning the *Heck* doctrine.  (Dkt. #30 at 8-10). Because Plaintiffs' TVPRA claims, if successful, would necessarily challenge the validity of Plaintiff's sentences, the terms of his probation, and/or the revocation of his suspended sentence, they are barred by *Heck*.  Plaintiff Hartman has the right to pursue post-conviction relief in the State of Oklahoma concerning the terms of his sentence and/or regarding the rejection of his probation status.  22 O.S. §1080; *e.g., Tilden v. State*, 2013 OK CR 10, 306 P.3d 554 (addressing trial court's revocation of suspended sentence).  Plaintiff Hartman must, pursuant to *Heck*, pursue those claims for relief *before* he can bring a civil claim for relief under the TVPRA.  Since he failed to do so, his TVPRA claims must be dismissed.

### E.   PLAINTIFFS' RICO CLAIMS (COUNT VI AND COUNT VII) FAIL AS A MATTER OF LAW

As stated above, Plaintiff's First Amended Complaint has added two claims for violation of the RICO Act, pursuant to 18 U.S.C. §1961, 1962(d) and 1962(c).  Plaintiffs allege that Defendant Raymond Jones conducted the affairs of D.A.R.P. through "a pattern of racketing activity (namely, holding persons in voluntary servitude and forced labor) in violation of 18 U.S.C. §1962(c)."  (Dkt. #39 at ¶171).  Plaintiffs further allege that Defendants D.A.R.P., Hendren Plastics, R&R Engineering and Western Alliance have "conspired with defendant Jones in this conduct in violation of 18 U.S.C. § 1962(d))."  (Dkt. #39 at ¶172).  Count VII mimics the allegations in Count VI, but asserts that Defendants D.A.R.P., Hendren Plastics, R&R Engineering and Western Alliance have "conducted the affairs of an **association-in-fact enterprise** through a

17

pattern of racketeering activity (namely, holding persons in involuntary servitude and forced labor) in violation of 18 U.S.C. §1962(c)."  (Dkt. #39 at ¶ 176) (emphasis added).

The major purpose behind RICO is to curb the infiltration of legitimate business organization by racketeers. *See Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 98, 990 (10th Cir. 1989); *U.S. v. Turkette*, 452 U.S. 576, 691 (1981) (noting RICO purpose was to "address the infiltration of legitimate business by organized crime.").  RICO provides a private right of action under 18 U.S.C. §1964(c), which provides in pertinent part:  "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."   To successfully state a RICO claim, a plaintiff must allege four elements:  (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.[5]  *See Amaya v. Bregman*, 149 F.Supp.3d 1312, 1319 (D.N.M. 2015) (citing *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002).

Before analyzing whether Plaintiff has stated a claim for violation of RICO, the Court must assess whether Plaintiffs have standing to pursue a RICO claim.  In order to confer standing to sue under RICO, the RICO violation must have injured the plaintiff's business or property.  18 U.S.C. §1964(c); *Amaya*, 149 F.Supp.3d at 1319-1320.  That is, "a plaintiff has standing to bring a RICO claim only if he was injured in his business or property by reason of the defendant's violation of §1962."  *See Deck v. Engineered Laminates*, 349 F.3d 1253, 1257 (10th Cir. 2003).  As noted in *Amaya*, this limitation "helps to assure that RICO is not expanded to provide a federal cause of

---

[5] "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. §1962(c).

action and treble damages to every tort plaintiff." *Amaya*, 149 F.Supp.3d at 1320 (quoting *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3[d] Cir. 2000)).   In this case, the First Amended Complaint contains <u>no allegations</u> that Plaintiffs were injured in their "business or property" by reason of Defendants' violation of §1962.   Plaintiffs were not engaged in any "business," and they have failed to identify any protectable "property" interest that was injured by Defendants' violation of §1962.   As shown above, they had no "employment" relationship with Defendants and were therefore not improperly deprived of any type of identifiable or protected property interest.   *See Doe v. Roe*, 756 F.Supp. 353, 359 (N.D. Ill. 1991) ("Except possibly where there is an actual employment relationship . . . lack of compensation for services will not be considered injury to business or property under RICO.").   They therefore lack standing.

Even assuming Plaintiffs have standing, they have failed to state a cognizable RICO claim. First, Plaintiffs, as shown above, have failed to state a viable TVPRA claim.   The RICO claim fails because it is necessarily based on the validity of the TVPRA claim.

Second, Plaintiffs have failed to identify an "enterprise" for purposes of RICO liability.[6] An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."   18 U.S.C. §1961(4).   To properly allege an "enterprise," Plaintiff must allege three components:   (1) that there was an "ongoing organization with a decision-making framework or mechanisms for controlling the group," (2) that various associates function as a continuing unit, and (3) the enterprise exists separate and apart from the pattern of racketeering activity.   *See Kearney v. Dimanna*, 195 Fed. Appx. 717, 720 (10th Cir. 2006).

---

[6] Conclusory or speculative allegations that an enterprise exists, standing alone, are insufficient to defeat a motion to dismiss.   *See, e.g., Monarch Normandy Square Partners v. Normandy Square Assoc. Ltd. Partnership*, 817 F. Supp. 908, 916 (D. Kan. 1993).

Here, the alleged enterprise and the alleged pattern of racketeering activity are the same: Plaintiffs allege that the Defendants associated for the purpose of engaging human trafficking and forced labor.  (Dkt. #39 at ¶¶112-115).  The "enterprise" would not exist if the alleged trafficking and forced labor allegations were removed.  Further, the facts do not showing that the alleged "enterprise" had a "decision-making framework" or a "mechanism for controlling the group" or that the "various associates function as a continuing unit."  To the contrary, Plaintiffs allege that D.A.R.P. acts as "an independent entity," and that D.A.R.P. – *not Western Alliance or other defendants* – allegedly "misrepresent[s]" itself as a "legitimate treatment provider to Oklahoma courts."  (Dkt. #39 at ¶106).  For those reasons, Plaintiffs have failed to allege any facts supporting an "enterprise" under RICO.  *E.g., Kearney,* 195 Fed.Appx at 720-721.

Third, Plaintiff has not alleged any facts showing that Defendant Western Alliance "conducted or participated" directly or indirectly in the conduct of the enterprise's affairs through a pattern of racketeering activity.  To be liable under §1962(c), that person "must participate in the operation or management of the enterprise itself," which means having "some part in directing those affairs."  *See Reves v. Ernst & Young*, 113 S. Ct. 1163, 1170 (1993).  "Liability depends on showing that the defendants conducted or participated in the conduct of the *'enterprise's* affairs,' not just their *own* affairs."  *Id.* at 1173.  Here, Plaintiffs have not alleged facts showing that Western Alliance conducted or participated in the "enterprise's" affairs.  Rather, Plaintiffs' First Amended Complaint is premised on the allegation that the business-entity defendants *independently* benefited from the alleged "forced labor," and agreed to pay D.A.R.P. for this "forced labor."[7]

---

[7] An agreement to provide goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result.  *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1102 (10th Cir. 1999) (citing *Univ. of Md. At Baltimore v. Peat, Marwick*, 996 F.2d 1534, 1438 (3d Cir. 1993)).

(Dkt. #39 at ¶¶107, 108, 113).  The allegations do not show that Western Alliance "conducted or participated" in the enterprises affairs through a pattern of racketeering activity.

Fourth, Plaintiffs have failed to identify a "pattern of racketeering activity."  A "pattern of racketeering activity" requires "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).  RICO specifically defines "racketeering activity" as any act that violates specified state and federal crimes, including mail fraud, wire fraud, and bank fraud. 18 U.S.C. § 1961(1); *Resolution Trust Corp v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993). The various acts of racketeering activity described in the statute are often referred to as "predicate acts" because they form the basis for liability under RICO.  *See Bacchus Industr., Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  In this case, Plaintiffs have not identified any act by Western Alliance that violates the state and federal crimes identified in §1961(1).  (*See, e.g*., Dkt. #39 at ¶¶166-178).  Nor have Plaintiffs identified a *pattern* of any such activity, i.e., Plaintiffs have made no showing of a "relationship between the predicates . . . and the threat of continuing activity – that is, 'continuity plus relationship.'"  *See Resolution Trust*, 998 F.2d at 1543 (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989)).  For that reason, Plaintiffs' RICO claims must be dismissed.

Finally, a RICO plaintiff is required to prove both factual and proximate causation.  *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 266-68 (1992).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  In this case, Plaintiffs have failed to identify any racketeering activity, any pattern of

21

racketeering activity, and have failed to allege any harm resulted from any such pattern of racketeering activity.  The First Amended Complaint simply alleges that Plaintiffs have been "injured in an amount to be proved at trial."  (Dkt. #39 at ¶173).  These conclusory causation allegations are insufficient to show "some direct relation between the injury asserted and the injurious conduct alleged."  *See Anza*, 547 U.S. at 457.   For all those reasons, Plaintiffs' RICO claims fail and should be dismissed.[8]

### F.    PLAINTIFFS' INVOLUNTARY SERVITUDE CLAIMS (COUNT II AND IV) AND RICO CLAIMS (COUNTS VI AND VII) SHOULD BE DISMISSED UNDER RULE 19 FOR FAILURE TO JOIN AN INDISPENSABLE PARTY, NAMELY, THE STATE OF OKLAHOMA

In addition, Plaintiff Hartman's claims against Western Alliance should be dismissed for Plaintiffs' failure to join an indispensable party – the State of Oklahoma – under Rule 19 of the Federal Rules of Civil Procedure.  Defendant Western Alliance adopts and incorporates herein the arguments previously made by Defendant Simmons Foods, Inc.  (Dkt. #30 at 11-12).

Pursuant to Federal Rule of Civil Procedure 19, dismissal is required where a plaintiff fails to join an indispensable party.  Rule 19 contemplates dismissal where (1) an absent party is "required to be joined" under Rule 19(a), i.e., it is a "necessary" party; (2) joinder of the party is not feasible, and (3) in equity and good conscience, the action cannot proceed without the absent part, i.e., the absent party is "indispensable."  *See Northern Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1278 (10th Cir. 2012).

---

[8] Plaintiffs' RICO conspiracy claim fails because Plaintiffs can identify no viable underlying RICO claim.  *Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006) ("If a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law.").

This rule requires dismissal of Plaintiff Hartman's TVPRA claims and RICO claims because:  **First,** the State is a *necessary* party, because it has several interests in this case which cannot be protected if these claims were allowed to proceed in its absence, including (a) not having its judgments, sentences, and probation orders collaterally attacked; (b) defending the decision of its judges and district attorneys from claims that could potentially subject them to criminal and civil liability; and (3) defending its ability to sentence offenders to work-based rehabilitation programs as an alternative to prison.   **Second**, joinder of the State is infeasible because it is immune from suit.  *See Harnsberger*, 697 F.3d at 1282; U.S. Const. Amend. XI.  **Third**, the State is indispensable because a judgment in Hartman's favor will prejudice the State's ability to protect its interests, such prejudice cannot be minimized by narrowing the relief requested, and a judgment rendered in the State's absence will likely result in further litigation against State officials and, thus, would be inadequate; dismissing these claims does not deprive the Hartman of an adequate remedy because he can re-assert them after obtaining appropriate post-conviction relief;[9] and litigating this case in the State's absence vitiates its sovereign immunity. For those reasons, Plaintiff Hartman's TVPRA and RICO claims against Western Alliance should be dismissed per Rule 19.

### G. PLAINTIFFS' OKLAHOMA PROTECTION OF LABOR ACT CLAIM (COUNT XIII) AGAINST WESTERN ALLIANCE IS WITOUT MERIT

Finally, Plaintiffs have pursued a claim against Western Alliance for violation of the Oklahoma Protection of Labor Act, arguing that Western Alliance was the "employer" of Plaintiff

---

[9] Further, the lack of an adequate remedy does not prevent dismissal under Rule 19 where the other factors favor dismissal.  *See Harnsberger*, 697 F.3d at 1283-84 ("The parties do not dispute that dismissal of this action leaves the Northern Arapaho with no remedy at all, let alone an adequate one.  But this fact, while unsatisfying, does not preclude dismissal, particularly '[w]hen viewed in light of the Tribe's sovereign immunity and the first three Rule 19(b) factors.'").

Hartman and failed to provide Hartman with minimum wages and overtime compensation.  (Dkt. #39 at ¶¶45-46).  Plaintiffs' claims under the Oklahoma Protection of Labor Act ("OPLA") assume that an employment relationship existed between Plaintiffs and Defendants.  *See, e.g.*, 40 O.S. §161 *et seq*.  Indeed, a wage claim under the OPLA is predicated on the existence of an "employer-employee" relationship.  *See Coen v. SemGroup Energy Partners G.P., LLC*, 2013 OK CIV APP 75, 310 P.3d 657, 662; *Bliss v. Affiliated Pathologists, P.A.*, 2017 WL 4343127 (E.D. Okla. 2017).

As shown above, Plaintiff Hartman is the only identified Plaintiff with any connection to Western Alliance, and he has failed to allege any facts establishing such an employment relationship.  (Dkt. #39 at ¶¶51-54).  For the reasons discussed above with respect to Plaintiffs' FLSA claims, Plaintiffs' identical claims under the OPLA fail.  Plaintiff Hartman and Western Alliance were not in an "employer-employee" relationship.  Rather, Hartman was sent to D.A.R.P. via Court order, as part of his probation and for purposes of rehabilitation – which included work-related therapy.  He became affiliated with Western Alliance for that very purpose.  Plaintiffs have identified no allegations indicating this was an "employment" relationship, or that Hartman was *promised* compensation or *expected* compensation from Western Alliance.

## IV.    CONCLUSION

Plaintiffs' claims in this case are without a basis in law or fact.  Plaintiff Hartman was not in an employment relationship with Western Alliance and therefore had no right to minimum wage or overtime compensation under the FLSA or the OPLA.  Plaintiff Hartman was not a victim of human trafficking or involuntary servitude; rather, he was sent to the D.A.R.P. program via a valid order from an Oklahoma Court, and he participated in that program to satisfy the terms of his probation and to respond to his drug addiction.  Any threats of "incarceration" for his failure to satisfy the terms of his probation were permissible warnings of "adverse but legitimate

consequences."  Plaintiffs' RICO claims are frivolous, as Plaintiffs cannot satisfy the fundamental requirements of such a claim.  Finally, (1) Plaintiff Hartman's TVPRA claims are subject to dismissal under *Heck*, since the claims necessarily challenge the terms and conditions of his sentence and/or the revocation of his probation; and (2) Plaintiff Hartman's TVPRA claims and his RICO claims are subject to dismissal because Plaintiff has failed to join an indispensable party (namely, the State of Oklahoma).

WHEREFORE, premises considered, Western Alliance (f/k/a Jer-Co Industries, Inc.), hereby requests the Court dismiss any and all claims pending against it, and for other appropriate relief.

Respectfully submitted,

BEST & SHARP

  /s  Sean H. McKee
Sean H. McKee, OBA #14277
Jessica L. Johnson, OBA #31851
One West Third Street, Suite 900
Williams Center Tower I
Tulsa OK 74103
(918) 582-1234 (Telephone)
(918) 585-9447 (Facsimile)
smckee@bestsharp.com
jjohnson@bestsharp.com
*Attorneys for Defendant,*
*Western Alliance, Inc.,*

## CERTIFICATE OF MAILING

I hereby certify that on the 22nd day of December, 2017, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

Daniel E. Smolen, OBA #19943
danielsmolen@ssrok.com
Donald E. Smolen, II OBA #19944
donaldsmolen@ssrok.com
David A. Warta, OBA #20361
davidwarta@ssrok.com
Lauren G. Lambright, OBA #22300
laurenlambright@ssrok.com
**Smolen, Smolen & Wortman, PLLC**
701 S. Cincinnati Avenue
Tulsa, Oklahoma 74119

*Attorneys for Plaintiffs, and all others
similarly situated*

Joseph R. Farris, OBA #2835
jfarris@tulsalawyer.com
Paula J. Quillin, OBA #7368
pquillin@tulsalawyer.com
**Franden, Farris, Quillin, Goodnight
 & Roberts**
2 W. 2nd St., Suite 900
Tulsa, OK 74103

*Attorneys for Hendren Plastics, Inc.*

Brady R. Henderson, OBA #21212
bhenderson@acluok.org
Amy N. Gioletti, OBA #30566
agioletti@acluok.org
**ACLU of Oklahoma Foundation**
P.O. Box 1626
Oklahoma City OK 73102

*Attorneys for Plaintiffs, and all others
similarly situated*

Christopher S. Thrutchley
cthrutchley@gablelaw.com
John D. Russell
jrussell@gablelaw.com
Sidney G. Dunagan
sdunagan@gablelaw.com
Amy M. Stipe
astipe@gablelaw.com
Philip D. Hixon
phixon@gablelaw.com
Justin A. Lollman
jlollman@gablelaw.com
**GableGotwals**
1100 ONEOK Plaza
Tulsa OK 74103

*Attorneys for Simmons Foods, Inc.*

26

Jack Mattingly, Jr., OBA #16136
**Mattingly & Roselius, PLLC**
P.O. Box 70
Seminole, OK 74818-0070
jackjr@mroklaw.com

William B. Putman AR Bar # 91198
 (admitted *pro hac vice*)
**Putman Law Office**
3900 N. Front Street, Suite 204
Fayetteville, AR 72703
bill@putmanlawoffice.com

*Attorney for D.A.R.P. and Raymond Jones*

Jack Mattingly, Jr., OBA #16136
**Mattingly & Roselius, PLLC**
P.O. Box 70
Seminole, OK 74818-0070
jackjr@mroklaw.com

William B. Putman AR Bar # 91198
 (admitted *pro hac vice*)
**Putman Law Office**
3900 N. Front Street, Suite 204
Fayetteville, AR 72703
bill@putmanlawoffice.com

*Attorney for Glenn E. Whitman*

 /s  Sean H. McKee

27