# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHANE NORRID, et al., | Case No. 6:17-cv-401-RAW |
| Plaintiffs, | |
| v. | |
| D.A.R.P., INC., et al., | |
| Defendants. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT HENDREN PLASTICS, INC.'S MOTION TO DISMISS PLAINTIFFS' RICO CLAIMS

**SMOLEN, SMOLEN & ROYTMAN, PLLC**
Daniel E. Smolen, OBA #19943
David A. Warta, OBA #20361
701 S. Cincinnati Ave.
Tulsa, OK 74119
Phone (918) 585-2667
Fax (918) 585-2669

**ACLU OF OKLAHOMA FOUNDATION**
Brady R. Henderson, OBA #21212
Amy N. Gioletti, OBA #30566
P.O. Box 1626
Oklahoma City, OK 73101
Phone (405) 525-3831
Fax (405) 524-2296

**AIMAN-SMITH & MARCY**
Carey A. James, CA Bar No. 269270*
Randall B. Aiman-Smith, CA Bar No.124599*
Reed W.L. Marcy, CA Bar No. 191531*
Hallie Von Rock, CA Bar No. 233152*
Brent A. Robinson, CA Bar No. 289373*
7677 Oakport St. Suite 1150
Oakland, CA 94621
Phone (510) 817-2711
Fax (510) 562-6830
*Admitted pro hac vice

**Attorneys for Plaintiffs, and all others similarly situated**

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................... 1

II.   HENDREN'S MOTION IS PROCEDURALLY INSUFFICIENT ........................................ 1

  A.   Hendren's Motion is Prohibited by the Federal Rules of Civil Procedure ......................... 1

  B.   Hendren's Motion Fails to Comply with Local Rule 7.1(o) ................................................. 3

III.   HENDREN'S MOTION IS WITHOUT SUBSTANTIVE MERIT ...................................... 3

  A.   Plaintiffs Have Stated a Claim for Violation of 18 U.S.C. § 1962(c) ................................. 5

    1.   Plaintiffs Properly Allege that Hendren is Engaged in an "Enterprise" ......................... 5

    2.   Plaintiffs Properly Allege that Hendren Participates in the Conduct of an Enterprise's
      Affairs .................................................................................................................. 7

    3.   Plaintiffs Properly Allege Racketeering Activity .......................................................... 8

    4.   Plaintiffs Properly Allege Injuries Proximately Caused by Hendren ........................... 10

  B.   Plaintiffs Properly Allege that Hendren Conspired to Violate 18 U.S.C. § 1962(c) in
    Violation of 18 U.S.C. § 1962(d) ..................................................................................... 11

  C.   Oklahoma is Not a Necessary or Indispensable Party to this Litigation ............................ 13

  D.   *Heck v. Humphrey* Has No Impact on this Case ............................................................... 18

IV.   CONCLUSION ..................................................................................................... 18

## TABLE OF AUTHORITIES

**Federal Statutes**

18 U.S.C. § 1584 ............................................................................................... 3, 8

18 U.S.C. § 1589 ............................................................................................. 3, 8, 9

18 U.S.C. § 1961 ............................................................................................... 8, 11

18 U.S.C. § 1962 .............................................................................................. passim

18 U.S.C. § 371 .................................................................................................... 12

**Federal Rules of Court**

FRCP 12(b) .......................................................................................................... 1, 2

FRCP 12(b)(2) ......................................................................................................... 1

FRCP 12(b)(6) ......................................................................................................... 1

FRCP 12(b)(7) ......................................................................................................... 1

FRCP 12(c) .............................................................................................................. 2

FRCP 12(g)(2) ...................................................................................................... 1, 2

FRCP 12, 1966 Adv. Comm. Notes........................................................................ 2

FRCP 19 ................................................................................................................ 13

FRCP 19(a)(1)(B) ................................................................................................. 13

FRCP 19(b)(2) ...................................................................................................... 17

FRCP 7(a) ................................................................................................................ 2

Local Rule 7.1(o) .................................................................................................... 3

**United States Supreme Court Cases**

*Boyle v United States*, 556 U.S. 938 (2009) ....................................................... 5, 7

*Heck v. Humphrey*, 512 U.S. 477 (1994)......................................................... 17, 18

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)..................................................... 7, 8

*Salinas v. United States,* 522 U.S. 52 (1997)........................................................ 12

*United States v. Kozminski*, 487 U.S. 931 (1988)................................................ 3, 8

*United States v. Turkette*, 452 U.S. 576 (1981) ...................................................... 6

**United States Court of Appeals Cases**

*ConnTech Dev. Co. v. Univ. of Conn. Educ.*, 102 F.3d 677 (2d Cir. 1996) ................ 13

*Crowe v. Clark*, 552 F.App'x 796 (10th Cir. 2014)................................................. 6

*George v. Urban Settlement Servs.*, 833 F.3d 1242 (10th Cir. 2016) ......................................... 5, 7

*Moffet v. Haliburton Energy Servs., Inc.*, 291 F.3d 1227 (10th Cir. 2002) ................................... 4

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174 (10th Cir. 2007)................................... 4

*Sac & Fox Nation v. Norton*, 240 F.3d 1250 (10th Cir. 2001) ................................................... 16

*Safe Streets All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017) ........................................ 5, 6, 7

*United States v. Harris*, 695 F.3d 1125 (10th Cir. 2012)........................................................... 12

*United States v. Hutchinson*, 573 F.3d 1011 (10th Cir. 2009)................................................. 6, 7

*United States v. Kamahele*, 748 F.3d 984 (10th Cir. 2014) ....................................................... 12

## United States District Court Cases

*Axis Specialty Ins. Co. v. Brickman Group LTD, LLC*, 2010 U.S.Dist.LEXIS 7969 (E.D. Pa.
    2010).......................................................................................................................... 14

*Cont'l Cas. Co. v. Am. Home Assurance Co.*, 2008 U.S.Dist.LEXIS 30106 (S.D.N.Y. 2008).... 13

*Delaware v. Bender*, 370 F. Supp. 1193 (D. Del. 1974)............................................................. 17

*EEOC v. JBS USA, LLC,* 794 F.Supp.2d 1188 (D. Colo. 2011).................................................. 16

*Elat v. Ngoubene*, 993 F.Supp.2d 497 (D. Md. 2014) ................................................................ 10

*Entek GRB, LLC v. Stull Ranches, LLC*, 2013 U.S. Dist. LEXIS 44500 (D. Colo. Mar. 27, 2013)
    .................................................................................................................................. 16

*Faith Temple Church v. Town of Brighton*, 2005 U.S.Dist.LEXIS 8065 (W.D.N.Y 2005)......... 14

*Franco v. Diaz*, 51 F. Supp. 3d 235 (E.D.N.Y. 2014) ................................................................ 10

*Guobadia v. Irowa*, 103 F.Supp.3d 325 (E.D.N.Y. 2015) .......................................................... 10

*Joseph v. Signal Int'l*, 2015 U.S. Dist. LEXIS 33870 (E.D. Tex. 2015) ..................................... 10

*Kuhn Constr. Co. v. Coastal Consultants, Inc.*, 723 F.Supp.2d 676 (D. Del 2010) .................... 13

*Mojsilovic v. Okla. ex rel. Bd. of Regents*, 2015 U.S. Dist. LEXIS 44109 (W.D. Okla. 2015).... 15

*Moretti v. Hertz Corp.*, 2016 U.S.Dist.LEXIS 40932 (D. Del. 2016) ......................................... 14

*Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F.Supp.2d 1134 (C.D. Cal. 2011) ........ 15

*Paguirigan v. Prompt Nursing Emp't Agency LLC*, 2017 U.S. Dist. LEXIS 218523 (E.D.N.Y.
    2017).......................................................................................................................... 10

*Ramos v. Hoyle*, 2008 U.S.Dist.LEXIS 102677 (S.D. Fla. 2008) ............................................... 15

*Ramos-Madrigal v. Mendiola Forestry*, 799 F.Supp.2d 958 (W.D. Ark. 2011) ......................... 15

*Ruiz v. Fernandez*, F.Supp.2d 1055 (E.D. Wash. 2013) ............................................................ 15

*Samuel v. Signal Int'l*, 2015 U.S. Dist. LEXIS 25486 (E.D. Tex. 2015)...................................... 10

*Sonnett v. Lankford*, 2016 U.S. Dist. LEXIS 191376 (D. Wyo. 2016)........................................... 16

*United States v. Payment Processing Ctr., LLC*, 2006 U.S.Dist.LEXIS 75715 (E.D. Pa. 2006) . 14

*Varlen Corp. v. Nat'l Union Fire Ins. Co.*, 2011 U.S.Dist.LEXIS (N.D. Ill. 2011) ..................... 14

**Oklahoma Statutes**

22 O.S. § 471.1 ........................................................................................... 9, 10, 14, 18

22 O.S. § 471.6 ................................................................................................. 4, 9, 10

43A O.S. § 3-415 ............................................................................................ 3, 4, 9, 14

Plaintiffs Shane Norrid, Kermit Michael Troxel, Kevin Hartman, Tim Hyers, Christopher Lynn Williams, Codie Shreve, and Steven England (collectively, "Plaintiffs") hereby oppose the motion to dismiss Plaintiffs' RICO claims (Doc. 105) filed by defendant Hendren Plastics, Inc. ("Hendren").

## I.      INTRODUCTION

Before the Court is Hendren's second motion to dismiss.  Hendren's first motion to dismiss (Doc. 48) was denied on March 27, 2018.  Doc. 86.  At the hearing on Hendren's first motion to dismiss, held on March 28, 2018, the Court admonished Hendren that there was no procedural basis for a second motion to dismiss.  Ignoring this statement, Hendren filed the present motion, which seeks, pursuant to FRCP 12(b)(6) and 12(b)(7), to dismiss the RICO claims contained in Plaintiffs' First Amended Complaint ("FAC," Doc. 39).  Hendren's present motion is explicitly prohibited by FRCP 12(b) and 12(g)(2) because Hendren has already moved for dismissal under 12(b) *and* has answered Plaintiffs' FAC.  Hendren's motion is therefore an impermissible third bite at the apple, and the Federal Rules of Civil Procedure require that it be denied on this basis alone.  Additionally, however, Hendren's motion is without substantial merit, and would not raise a colorable basis for dismissal even if it were properly before the Court.  Accordingly, Plaintiffs respectfully request that Hendren's motion be denied.

## II.     HENDREN'S MOTION IS PROCEDURALLY INSUFFICIENT

### A.      Hendren's Motion is Prohibited by the Federal Rules of Civil Procedure

With its present motion, Hendren seeks the dismissal of the RICO claims contained in Plaintiffs' FAC.  Plaintiffs filed their FAC on December 11, 2017.  Doc. 39.  Thereafter, Hendren moved to dismiss Plaintiffs' FAC pursuant to FRCP 12(b)(2).  Doc. 48.  Hendren's motion was denied on March 27, 2018, and Hendren filed an answer to Plaintiffs' FAC on April

9, 2018.  Doc. 86; Doc. 90.  Despite its previous motion to dismiss and its previously-filed answer, however, Hendren filed its present, second motion to dismiss on May 10, 2018.  Doc. 105.  This motion is doubly prohibited by the Federal Rules of Civil Procedure.

First, Rule 12(b) provides that defenses to claims asserted in a pleading may be raised by motion.  Such a motion, however, must be made before a responsive pleading.  *See,* FRCP 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed").  Here, Hendren has answered Plaintiffs' FAC, and its present motion to dismiss is therefore prohibited.[1]

Second, Rule 12(g)(2) provides that a party that makes a motion under Rule 12 "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."[2]  Here, Hendren has already moved to dismiss Plaintiffs' FAC, and its present motion is therefore prohibited.[3]  The purpose of Rule 12(g) is precisely to prevent the "piecemeal consideration" of claims requested by Hendren here.  *See,* FRCP 12, 1966 Adv. Comm. Notes.

/  /  /

/  /  /

---

[1] Though Hendren cites no authority for the proposition that its present motion to dismiss is procedurally permissible, it likely hopes to construe Plaintiffs' RICO case statement (Doc. 100) as a "pleading" giving rise to the opportunity for a post-answer motion to dismiss.  Any such assertion by Hendren would be incorrect.  Rule 7(a) explicitly sets forth the court filings constituting "pleadings."  Plaintiffs' RICO case statement is not a pleading.  Further, the Court's order regarding Plaintiffs' RICO case statement does not provide for or contemplate a response from the defendants.  *See*, Doc. 89.

[2] For example, "if the defendant moves before answer to dismiss the complaint for failure to state a claim, he is barred from making a further motion presenting the defense of improper venue, if that defense was available to him when he made his original motion."  FRCP 12, 1966 Adv. Comm. Notes.

[3] The exceptions set forth in Rule 12(g)(2) do not apply here.  Hendren's motion to dismiss is not a pleading as defined by Rule 7(a) or a Rule 12(c) motion for judgment on the pleadings, nor is a lack of subject matter jurisdiction at issue.

**B.** **Hendren's Motion Fails to Comply with Local Rule 7.1(o)**

In addition to contravening the Federal Rules of Civil Procedure, Hendren's motion also fails to comply with Local Rule 7.1(o), which provides that "all motions to dismiss shall include a section explaining why an amendment to the complaint or petition would be futile." Hendren's present motion, like its previous motion to dismiss, contains no such section. By failing to comply with 7.1(o), Hendren has failed to carry its burden with respect to its motion to dismiss, and has waived any argument that Plaintiffs should not be allowed to amend in the event that Hendren's motion is not denied in its entirety.

**III.** **HENDREN'S MOTION IS WITHOUT SUBSTANTIVE MERIT**

Plaintiffs allege that DARP, while masquerading as a treatment facility, provides no treatment, is unqualified to provide treatment, and is prohibited from participating in Oklahoma's drug court system. *See*, Doc. 39 ¶¶ 5, 103-04, 106-07; Doc. 100, Ex. B; 22 O.S. § 471.6(G) (requiring all treatment providers participating in the drug court process to be certified by the Oklahoma Department of Mental Health and Substance Abuse Services); 43A O.S. § 3-415(A) (requiring facilities providing drug and alcohol treatment to obtain certification from the Oklahoma Department of Mental Health and Substance Abuse Services).

Plaintiffs' RICO claims are predicated on violations of 18 U.S.C. §§ 1584 and 1589, which prohibit involuntary servitude and forced labor, respectively. Involuntary servitude and forced labor include labor obtained by, *inter alia*, abuse of legal process. *United States v. Kozminski*, 487 U.S. 931, 952 (1988) ("coercion through law or legal process"); 18 U.S.C. § 1589(a), (c)(2) (abuse of law or legal process). Abuse of legal process is the use of legal process "for any purpose for which the law was not designed." 18 U.S.C. 1589(c)(1).

As Hendren recognizes, an Oklahoma drug court is defined by statute as a judicial intervention process "for substance abuse treatment." Doc. 105 at 1 (citing 22 O.S. § 471.1). Again, however, DARP is not qualified to provide substance abuse treatment, and, as a non-certified facility, is prohibited from participating in the drug court system. 43A O.S. § 3-415(A); 22 O.S. § 471.6(G). Rather than providing treatment, DARP and Hendren usurp the proper purpose of the drug court system, and use the threat of prison solely to compel labor for private profit. *See,* Doc. 39 ¶¶ 2, 5, 103-07. This is a clear use of legal process for a purpose for which it was not designed.

Seeking to evade this conclusion, Hendren's motion to dismiss is largely premised on contesting the factual allegations in Plaintiffs' FAC. Hendren's motion, for example, contains various iterations of the contention that DARP is a legitimate treatment center and does, in fact, provide treatment. *See, e.g.,* Doc. 105 at 2 (stating that DARP is a "long-term, residential drug and alcohol treatment provider"). This strategy is an impermissible basis for a motion to dismiss, for the purposes of which courts assume the truth of a plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007); *Moffet v. Haliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002).[4] At a later stage of this litigation, Hendren is free to enter evidence that DARP is somehow certified (it is not) or provides treatment (it does not), but Hendren's naked assertions to this affect cannot serve as the basis for a motion to dismiss. When Hendren's impermissible factual assertions are stripped away, there is little left of its motion, and its remaining legal arguments cannot withstand scrutiny.

---

[4] Even if Hendren's factual contentions were permissible for present purposes, they are arguably contradicted by DARP's own admissions in this litigation. *See*, Doc. 50 ¶¶ 2 ("DARP denies that it holds itself out as a long-term residential drug and alcohol treatment facility"); *cf*. Doc. 39 ¶¶ 103-04 with Doc. 50 ¶¶ 103-04.

### A.    Plaintiffs Have Stated a Claim for Violation of 18 U.S.C. § 1962(c)

As Hendren observes, a violation of 18 U.S.C. § 1962(c) requires (1) the conduct, (2) of an enterprise, (3) through a pattern, of (4) racketeering activity.  Doc. 105 at 4.  Here, Plaintiffs have sufficiently pled each of these elements.

### 1.    Plaintiffs Properly Allege that Hendren is Engaged in an "Enterprise"

With respect to Count VII of the FAC, Plaintiffs allege that DARP and Hendren comprise an association-in-fact enterprise.  Doc. 39 ¶ 114, 175-78; Doc. 100 ¶ 6.  An "association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct.  Such an entity need not have a hierarchical structure or a chain of command." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 882-83 (10th Cir. 2017) (citing *Boyle v United States*, 556 U.S. 938, 946 (2009)) (internal punctuation and citations omitted).  An association-in-fact enterprise requires only: "[1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle*, 556 U.S. at  946; *Hickenlooper*, 859 F.3d at 883 (quoting *id.*); see *also*, *George v. Urban Settlement Servs*., 833  F.3d 1242, 1248 (10th Cir. 2016).   Of these requirements, Hendren challenges only the "purpose" element.

At the threshold, Hendren's arguments must fail because they are premised on disputing the factual contentions contained in Plaintiffs' FAC.  For example, Hendren asserts that the purpose of its contracts with DARP "was not, as Plaintiffs assert, to benefit from forced labor and involuntary servitude"; that Plaintiffs' allegations of threats of prison are "not plausible"; and that it "is simply not plausible than Hendren profited from involuntary servitude or forced labor."  Doc. 105 at 6.  These bald assertions cannot sustain a motion to dismiss.

Plaintiffs allege that DARP and Hendren usurp the proper purpose of the drug court system by participating in the system without being qualified to do so; failing to provide treatment to residents; obtaining residents that can be, and are, threatened with prison for the failure to perform labor; negotiating and executing mutual contracts to provide and receive such labor; delivering, transporting, and receiving such labor; transmitting and receiving funds for the provision of such labor; and withholding wages from DARP residents by mutual agreement – an arrangement by which DARP receives substantial revenue and Hendren profits by obtaining below-market-rate labor.  Doc No. 100 ¶¶ 2, 5(f), 6(b); Doc. 39 ¶¶ 2-5, 104-09, 114.  These allegations are more than sufficient to demonstrate that DARP and Hendren associate together with a common purpose.  In *Hickenlooper*, for example, the Tenth Circuit held that plaintiffs sufficiently alleged an association-in-fact enterprise where they alleged that defendants "'pooled their resources, knowledge, skills, and labor to achieve … efficiencies in the cultivation and distribution of marijuana that none of them could have achieved individually'").  859 F.3d at 883.  Plaintiffs' allegations here are considerably more specific, detailed, and developed, and are more than sufficient to support a claim of an association-in-fact enterprise.

Hendren's observation that a RICO enterprise is "an element separate and distinct from the pattern of racketeering" does not change this result.  An association-in-fact enterprise is simply a group of persons associated together for a common purpose.  *See, United States v. Turkette*, 452 U.S. 576, 583 (1981).  The requirement of an "enterprise" as a separate element means only that Plaintiffs must allege that a group with a common purpose exists (enterprise), and that the group engages in unlawful conduct (racketeering activity).  Hendren, however, implies that a RICO enterprise must exist for some purpose beyond racketeering activity.  This is incorrect: An enterprise need have "no purpose or economic significance beyond or independent

6

of the group's pattern of racketeering activity." *United States v. Hutchinson*, 573 F.3d 1011, 1020-22 (10th Cir. 2009); *see also, Crowe v. Clark*, 552 F.App'x 796, 800 (10th Cir. 2014) ("an enterprise need not exist separate and apart from a pattern of racketeering activity"). Accordingly, while the existence of an "enterprise" and a "pattern of racketeering activity" are separate elements, the facts establishing these elements may be synonymous. *See*, *Hutchinson*, 573 F.3d at 1021 (quoting *Boyle*, 556 U.S. at 947) ("evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise may in particular cases coalesce") (internal punctuation omitted).

### 2.   Plaintiffs Properly Allege that Hendren Participates in the Conduct of an Enterprise's Affairs

Next, Hendren asserts that Plaintiffs have not sufficiently alleged that Hendren participates in the conduct of the alleged enterprise's affairs.  Doc. 105 at 7-8. This is incorrect. With respect to the "conduct" element of 1962(c), that statute requires only that a defendant "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs."  18 U.S.C. § 1962(c).  This element is satisfied if the defendant "participate[s] in the operation or management of the enterprise."  *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).  This does not require that a defendant have "primary responsibility for the enterprise's affairs."  *Id*. at 179; *see also, Hickenlooper*, 859 F.3d at 883-84 (quoting *id*.).  "A plaintiff can easily satisfy *Reves'* operation and management test by showing that an enterprise member played some part – even a bit part – in conducting the enterprise's affairs."  *Hickenloope*r, 859 F.3d at 884 (quoting *George*, 833 F.3d at 1252).  Here, with respect to the association-in-fact enterprise alleged by Plaintiffs, Plaintiffs allege that Hendren directly and substantially participates in the ongoing activities of the enterprise, and that Hendren is a crucial actor in those activities.  Hendren negotiates and consummates contracts for the provision, receipt, and payment of unlawful labor;

receives and utilizes such labor; transmits funds to DARP for such labor; and withholds wages from DARP residents.  Doc No. 100 ¶¶ 2, 5(f), 6(b); Doc. 39 ¶¶ 2-5, 104-09, 114.  The association-in-fact enterprise alleged by Plaintiffs would not exist without Hendren's active participation, and Hendren therefore shares primary responsibility for the enterprise's affairs – a level of involvement far more than necessary to satisfy the conduct element of § 1962(c).

Hendren's assertion that it cannot be liable under RICO simply for conducting its own affairs is disingenuous.  It is true that RICO "liability depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." *Reves*, 507 U.S. at 185 (internal punctuation and emphasis omitted).  Here, however, Hendren itself asserts that it has business operations that do not depend on, and are separate and apart from, the association-in-fact enterprise alleged by Plaintiffs, and which do not depend on racketeering activity.  *See*, Doc. 105 at 2 ("Hendren has many employees who are not DARP residents and does not rely solely on DARP residents for its workforce").  Plaintiffs do not challenge Hendren's routine business operations, conducted with a normal workforce.  Rather, Plaintiffs challenge Hendren's concerted participation, with DARP, in an enterprise for the provision of forced labor and involuntary servitude.  Nor is this a case, as asserted by Hendren, in which the defendant is accused merely of engaging in innocuous, legitimate transactions with a separate entity engaged in unrelated criminal conduct.  *See, id*. at 8.  Rather, Hendren's relationship with DARP is premised on, and enmeshed with, forced labor and involuntary servitude, and Hendren's participation is crucial to the unlawful enterprise alleged by Plaintiffs.

### 3.    Plaintiffs Properly Allege Racketeering Activity

Plaintiffs have properly alleged that Hendren and DARP have engaged in Racketeering Activity.  Involuntary servitude and forced labor in violation of 18 U.S.C. §§ 1584 and 1589 are

racketeering activities.  18 U.S.C. § 1961(1).  Involuntary servitude includes labor obtained by "coercion through law or legal process."  *Kozminski*, 487 U.S. 931, 952 (1988).  Forced labor includes labor obtained by threats of serious harm, including non-physical harm, or by abuse of legal process. 18 U.S.C. § 1589(a), (c)(2).  "Abuse of law or legal process" means the use of a law or legal process "for any purpose for which the law was not designed."  18 U.S.C. 1589(c)(1).

Here, Plaintiffs allege that DARP, while masquerading as treatment facility, provides no treatment; is unqualified and prohibited from providing treatment; and, because it is not certified by the Oklahoma Department of Mental Health and Substance Abuse Services ("ODMHSAS"), is not qualified to participate in Oklahoma's drug court system.  *See*, Doc. 39 ¶¶ 2, 5, 103-04, 106-07, 109; Doc. 100 at 2 and Ex. B (DARP is a non-certified, residential facility); 22 O.S. § 471.6(G) (requiring all treatment providers participating in the drug court process to be certified); 43A O.S. § 3-415(A) (requiring facilities providing treatment to be certified).  By improperly inserting itself into the drug court system, DARP diverts men from facilities providing treatment to DARP, where no treatment is provided, and residents are forced to work for Hendren under threat of prison.  This corruption of the requirements and purpose of the Oklahoma Drug Court Act is abuse of legal process in the purest possible sense.[5]

This is doubly true for Hendren.  Hendren is a private corporation with no connection whatsoever to any public institution.  Doc. 39 ¶ 94.  By statutory definition, an Oklahoma drug court is a "judicial intervention process for substance abuse treatment."  22 O.S. § 471.1(A).

---

[5] In addition to abuse of law and legal process, the defendants' conduct also violates the prohibition on forced labor because the threat of prison constitutes the threat of "serious harm," which 18 U.S.C. § 1589(c)(2) defines as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."

Like DARP, Hendren is not certified by the ODMHSAS and cannot provide substance abuse treatment.  43A O.S. § 3-415(A).  Because they cannot (and do not) provide treatment, DARP and Hendren necessarily use the Drug Court Act and the drug court process for a purpose for which they were not designed.  The Drug Court Act establishes incarceration as a possible sanction for a failure to comply with treatment.  22 O.S. §§ 471.1(G)(8), 471.6(D)(2).  Again, however, DARP and Hendren do not provide treatment and instead use the threat of prison solely to compel labor for private profit.  Compelling labor for profit is not the purpose of the Drug Court Act, and is not, as Hendren contends, "legitimate."

Hendren's contention that Plaintiffs "were free to quit showing up at Hendren at any time," that "there was nothing Hendren did to prevent Plaintiffs from ending their work," and that Plaintiffs' continued labor for Hendren was thus somehow "voluntary" does not change this result.   First, this argument is premised on impermissible (and unsupported) factual contentions, and fails for this reason alone.  Second, "The TVPRA does not require that plaintiffs be kept under literal lock and key," and the "free to leave" argument, even when premised on a developed factual record properly before the court, is routinely rejected as a basis for disposing of TVPRA claims.  *Franco v. Diaz*, 51 F. Supp. 3d 235, 247 (E.D.N.Y. 2014); *Paguirigan v. Prompt Nursing Emp't Agency LLC*, 2017 U.S. Dist. LEXIS 218523, *14 (E.D.N.Y. 2017); *Joseph v. Signal Int'l*, 2015 U.S. Dist. LEXIS 33870, *45-47 (E.D. Tex. 2015); *Samuel v. Signal Int'l*, 2015 U.S. Dist. LEXIS 25486, *17-18 (E.D. Tex. 2015); *Elat v. Ngoubene*, 993 F.Supp.2d 497, 529-30 (D. Md. 2014); *Guobadia v. Irowa*, 103 F.Supp.3d 325, 335 (E.D.N.Y. 2015).

### 4.    Plaintiffs Properly Allege Injuries Proximately Caused by Hendren

Next, Hendren asserts that Plaintiffs have not properly alleged that they sustained injuries proximately caused by Hendren.  This argument is spurious.  Plaintiffs allege, and Hendren

10

admits, that Plaintiffs received no cash wages for their labor and that Hendren remitted payment directly to DARP.  Doc. 90 ¶ 4.  Hendren claims that this deprivation of wages was not injurious because "Plaintiffs had no expectation of payment" and no "express or implied expectation of compensation."  Doc. 105 at 14.  Aside from resting on impermissible (and unsupported) factual contentions, this argument has no basis in law.  Involuntary servitude and forced labor do not require an expectation of compensation.  Hendren provides no authority supporting its position to the contrary, and, if the law were otherwise, a defendant could evade liability simply by informing his victims up front that they would receive no (or impermissibly low) wages.  This is simply not the law.

### B. Plaintiffs Properly Allege that Hendren Conspired to Violate 18 U.S.C. § 1962(c) in Violation of 18 U.S.C. § 1962(d)

With respect to Count VI of their FAC, Plaintiffs allege that Hendren violated 18 U.S.C. § 1962(d) by conspiring with defendant Raymond Jones to conduct the affairs of DARP through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).  *See,* Doc. 39 ¶¶ 109, 112-13, 170-74; Doc. 100 ¶¶ 14.  Hendren challenges Plaintiffs' § 1962(d) conspiracy claims on two bases, both of which are misplaced.

First, referring to its analysis of the association-in-fact enterprise alleged by Plaintiffs with respect to Count VII, Hendren asserts that "Plaintiffs have failed to properly allege that an enterprise actually existed."  Doc. 105 at 15.  The enterprise relevant to Plaintiffs' § 1962(d) conspiracy claim (Count VI), however, is not the association-in-fact enterprise relevant to Count VII, but rather DARP itself.  Doc. 39 ¶¶ 112-13, 170-74; Doc . 100 ¶¶ 6(a), 6(e), 14.  Hendren's argument is therefore based on a misunderstanding of Plaintiffs' claims.  The RICO Act defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. §

1961(4).   DARP is a corporation (Doc. 39 ¶ 90; Doc. 50 ¶ 90), and is therefore clearly an enterprise within the meaning of the Act.

Second, Hendren argues that "Plaintiffs have failed to properly allege they were injured by any predicate acts of Hendren." Doc. 105 at 15.  This contention misconstrues the law, and is factually incorrect.  RICO conspiracy does not require that a defendant commit a predicate act (or any overt act).  In *Salinas v. United States*, the defendant, who was acquitted of violating § 1962(c), challenged his conviction for § 1962(d) conspiracy on the basis that "the jury was not instructed that he must have committed or agreed to commit two predicate acts himself." 522 U.S. 52, 365 (1997).  The Supreme Court rejected this argument, holding that the defendant's "interpretation of the conspiracy statute is wrong," and that § 1962(d) contains "no requirement of some overt act or specific act." *Id.*; *see also, United States v. Kamahele*, 748 F.3d 984, 1006 (10th Cir. 2014) (citing *id.*); *United States v. Harris*, 695 F.3d 1125, 1133 (10th Cir. 2012) ("§ 1962(d) requires no overt act, unlike the general criminal conspiracy statute, 18 U.S.C. § 371, which does").  Accordingly, Plaintiffs here need not plead or prove that they were injured by any predicate act committed by Hendren itself.

In any case, however, Plaintiffs do in fact allege that Hendren committed overt acts – executing agreements with DARP for the provision of forced labor, withholding wages from DARP residents and transmitting them to DARP, and receiving and utilizing forced labor to produce products for sale in interstate commerce – and that Hendren directly participates in and benefits from the predicate acts of involuntary servitude and forced labor.  Doc. 39 ¶¶ 3-4, 107-09, 113, 150-52; Doc. 100 ¶¶ 2 (second-to-last subparagraph), 5(b), 5(f), 10.  Accordingly, even if Hendren's interpretation of the law were correct (it is not), its argument would still be unavailing.

12

### C.      Oklahoma is Not a Necessary or Indispensable Party to this Litigation

Hendren's arguments for the joinder of Oklahoma are disingenuous, vague, and fatally attenuated.  Hendren is a private, for-profit corporation.  It has no connection to the State, and its joinder arguments are a transparent attempt to evade accountability for its conduct.  Rule 19 does not countenance "self-serving attempts to assert interests on behalf of" non-parties to escape court jurisdiction.  *ConnTech Dev. Co. v. Univ. of Conn. Educ*., 102 F.3d 677, 683 (2d Cir. 1996).  Plaintiffs do not challenge the conduct of any official in the State of Oklahoma, and the elements of Plaintiffs' claims require no such inquiry.  No element of any claim in this action requires a showing that any referral to DARP was improper.  Plaintiffs make no such assertion, and this question is irrelevant to their claims. Liability rests solely on establishing that the defendants' conduct, once residents arrived at DARP, was unlawful.  The defendants in this action engaged in their misconduct on their own, and Hendren cannot evade liability by seeking to conflate its own conduct with that of the public officials of Oklahoma, or by justifying its actions by pointing to the very legal process it flagrantly abused.

The impropriety of Hendren's position is demonstrated by the fact that it is Hendren, not the State of Oklahoma, claiming the putative interest of Oklahoma in this case.  Joinder of an absent party is required under Rule 19 only where the absent party "claims an interest relating to the subject of the action."  FRCP 19(a)(1)(B).  "Where there is no showing that the absent party actually has claimed an interest relating to the subject of the action, the court may deny a motion to dismiss."  *Kuhn Constr. Co. v. Coastal Consultants, Inc*., 723 F.Supp.2d 676, 692 (D. Del 2010) (denying dismissal where absent party "has taken no action in the current case to assert that it has any interest in the subject matter of this case"); *Cont'l Cas. Co. v. Am. Home Assurance Co*., 2008 U.S.Dist.LEXIS 30106, *10-11 (S.D.N.Y. 2008) ("For a party to be

necessary within the meaning of Rule 19(a)(1)(B)(i), the absent party must be the one claiming the interest.  A party named in the litigation cannot assert the interest on the absent party's behalf") (internal citation omitted).[6]  The cynicism of Hendren's position is further demonstrated by the fact that Hendren initially argued that it had so few connections with Oklahoma that this Court could not even exercise jurisdiction.  Doc. 48.  In a spectacular about-face, however, Hendren now claims (while still seeking to transfer this case to Arkansas) that Hendren is so enmeshed with the State of Oklahoma that this litigation cannot proceed without the State as a party.  This is nonsense.

Beyond this, Hendren's arguments for joinder fall apart upon a cursory examination. First, Hendren argues that its practice of paying DARP directly, with "DARP retaining said moneys to cover DARP's costs of the services provided" is "authorized by Oklahoma law." Doc. 105 at 16.  This is simply untrue.  In making this assertion, Hendren is presumably referring to 22 O.S. § 471.1(G), which is referenced in page 2 of Hendren's brief, and which provides that drug courts shall ensure "payment of court costs, treatment costs, supervision fees, and program user fees by the offender."  This provision, however, simply provides that drug court participants will pay their own treatment fees.  It does not "authorize" treatment providers, much less private third parties like Hendren, to compel the labor of participants to obtain such payment.  Further, DARP does not provide treatment and is unqualified to do so (*see,* 43A O.S. § 3-415(A)), and could therefore not avail itself of this provision in any case.

Next, Hendren relies on numerous iterations of the claim that Oklahoma must be joined as a party because it is the State, not Hendren or DARP, who "holds the jail key."  Doc. 105 at

---

[6] *See also, Axis Specialty Ins. Co. v. Brickman Group LTD, LLC*, 2010 U.S.Dist.LEXIS 7969, *5 n.1 (E.D. Pa. 2010); *Moretti v. Hertz Corp*., 2016 U.S.Dist.LEXIS 40932, *11 (D. Del. 2016); *United States v. Payment Processing Ctr., LLC*, 2006 U.S.Dist.LEXIS 75715, *13-14 (E.D. Pa. 2006); *Varlen Corp. v. Nat'l Union Fire Ins. Co.*, 2011 U.S.Dist.LEXIS, *13-15 (N.D. Ill. 2011); *Faith Temple Church v. Town of Brighton*, 2005 U.S.Dist.LEXIS 8065, *15-16 (W.D.N.Y 2005).

16-17. By definition, however, every case of abuse of law and legal process involves the threat of a state sanction misused by private parties. This obviously does not mean, however, that the State must be joined as a party. For example, an employer who uses the threat of deportation to retain employees violates the TVPRA because immigration laws "are not intended to help employers retain employees through threats of deportation." *Ruiz v. Fernandez*, F.Supp.2d 1055, 1075-77 (E.D. Wash. 2013); *see also, Ramos v. Hoyle*, 2008 U.S.Dist.LEXIS 102677, *11 (S.D. Fla. 2008) (rejecting the argument that threatening the loss of immigration status if employment was terminated was a "truthful statement and not an abuse of legal process").[7] Here, the Drug Court Act authorizes DARP to provide treatment. The defendants, however, ignore this directive and instead use the threat of prison solely for their private objectives. Challenging this conduct does not implicate state action any more than challenging the misuse of immigration laws and visa procedures by private employers challenges the actions of immigration authorities. Accordingly, Hendren's insistence that "the liability of Hendren and DARP cannot be decided without imputing liability on the State" (Doc. 105 at 21) is simply incorrect. Again, the defendants in this action are the wrongdoers, they committed their wrongful conduct alone, and they cannot evade liability by attempting to impute their misconduct to the State of Oklahoma.

Next, Hendren relies on numerous iterations of the argument that this litigation could "impair or impede" drug courts' "ability to offer supervised drug rehabilitation services" in lieu

---

[7] *See also, Mojsilovic v. Okla. ex rel. Bd. of Regents*, 2015 U.S. Dist. LEXIS 44109, *12 (W.D. Okla. 2015) ("although an employer may legitimately advise an employee that termination may result in a change in visa status, utilizing that fact to force labor is not permitted by the law"); *Ramos-Madrigal v. Mendiola Forestry*, 799 F.Supp.2d 958, 960-61 (W.D. Ark. 2011) (denying motion to dismiss based on defendant's argument that he did not violate the TVPRA by informing workers that he would contact immigration if they left work before the end of their term); *Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F.Supp.2d 1134, 1146 (C.D. Cal. 2011) ("Threatening deportation for violation of immigration laws clearly falls within the concept and definition of abuse of legal process since the alleged objective for such conduct was to intimidate and coerce Plaintiffs into forced labor").

of incarceration.  Doc. 105 at 16-17.  However, "an unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria."  *Sac & Fox Nation v. Norton*, 240 F.3d 1250, 1259 (10th Cir. 2001).  Here, Hendren fails to explain how holding a single, unlicensed treatment center accountable for the unlawful treatment of the residents in its custody could possibly impact the state's ability to offer rehabilitation services generally.  Accordingly, aside from its practical implausibility, Hendren's argument is too speculative for consideration.[8]

Next, Hendren attempts to claim interests on behalf of the State by asserting that this litigation collaterally attacks State courts' judgments, and could potentially subject Oklahoma judges and prosecutors to "criminal and civil liability."  Doc. 105 at 16-17.  Again, Hendren makes no attempt to develop these putative risks to the State beyond conclusory assertions, and provides no discussion of any ultimate facts by which these risks may materialize.  As previously stated, such unsubstantiated and speculative claims are insufficient to establish the State as a necessary party.  *See*, *EEOC v. JBS USA, LLC,* 794 F.Supp.2d 1188 (D. Colo. 2011) (quoting *Sac*, 240 F.3d at 1259) ("an unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria"); *Entek GRB, LLC v. Stull Ranches, LLC*, 2013 U.S. Dist. LEXIS 44500, at *9 (D. Colo. Mar. 27, 2013) (similar); *Sonnett v. Lankford*, 2016 U.S. Dist. LEXIS 191376, at *6 (D. Wyo. 2016) (similar).  Beyond this, however, the putative interests identified by Hendren are simply not impacted by Plaintiffs' claims.  A finding of liability is this case will establish that the defendants treated DARP residents residing at DARP facilities unlawfully.  This will not serve as a basis for the collateral attack of any Oklahoma judgment.  It will simply mean that, once

---

[8] The implausibility of Hendren's argument is further demonstrated by comparison to situations involving misuse of immigration laws: If an employer authorized to receive visa workers violates the law with respect to his workers, a frequent basis for TVPRA actions, that violation does not call into question the visa program generally or the state's ability assign visa workers to employers.  The only conduct in question is the employer's, and the visa system is not somehow "impaired or impeded."

residents arrive at DARP, the defendants cannot subject them to unlawful conduct.  Nor is there even a remote possibility that liability in this case will subject Oklahoma's judges and district attorneys to potential "criminal and civil liability."  As previously stated, the defendants here acted alone, and the question of their unlawful conduct does not fall on the shoulders of Oklahoma's public servants.  Moreover, judges are shielded, and district attorneys likely shielded, from suit by judicial and quasi-judicial immunity, respectively.[9]

Finally, Hendren argues that any "prejudice" to the State "cannot be minimized by narrowing the relief requested."  Doc. 105 at 17.  Such a narrowing, however, is not necessary because Hendren has not established any prejudice to the State in the first place.  Moreover, even if Hendren were able to identify any potential prejudice rising beyond speculation, it could effectively be addressed by this Court's powers under Rule 19(b)(2), including by a protective provision in any judgment providing that the State of Oklahoma shall not be prejudiced by such judgment.  *See, Delaware v. Bender*, 370 F. Supp. 1193, 1197-98 (D. Del. 1974).[10]

/ / /

/ / /

_____

[9] Relatedly, Hendren also asserts that joinder of the state is required because "a judgment rendered in the Drug Court's absence will likely result in further litigation against state officials."  Doc. 105 at 17-18.  Hendren does not explain how this might come about, probably because it is not possible.  The defendants' treatment of persons residing at DARP's facilities is not imputable to anyone else, much less the State.  The possibility of the suits imagined by Hendren is also obviated by sovereign immunity (recognized by Hendren itself), as well as by judicial and quasi-judicial immunity.

[10] Hendren repeatedly asserts that Oklahoma must be joined because of the possibility of injunctive relief in this action.  Plaintiffs' FAC does include injunctive relief in the standardized recitation of relief requested on page 46 of the complaint, but Plaintiffs' FAC does not contain a cause of action for injunction; Plaintiffs' RICO claims – the subject of Hendren's present motion – do not request injunctive relief (Doc. 39 ¶¶ 169, 174, 178); Plaintiffs have not moved for an injunction; and, even if Plaintiffs had brought a cause of action for injunction, there is no way of knowing what such an injunction might entail.  Further, if this Court were to find that a hypothetical, future injunction with respect to the defendants could potentially impact the State's interests, the Court could simply deny the injunction, which would not impact Plaintiffs' RICO claims (or any other claims actually pled).

### D.     *Heck v. Humphrey* Has No Impact on this Case

Lastly, Hendren argues that Plaintiffs' RICO claims must be dismissed under *Heck v. Humphrey*, 512 U.S. 477 (1994), because "at the heart of this action is Plaintiffs' displeasure with the conditions placed on their probation by State Drug Courts." Doc. 105 at 22. This is incorrect. Again, Oklahoma's drug courts send participants to DARP to receive "substance abuse treatment." 22 O.S. § 471.1(A). DARP and Hendren, however, deny this treatment and instead use court referrals simply to compel labor for profit. Accordingly, the "conditions placed" on Plaintiffs are not established by drug courts, but by private actors with their own private objectives. The *Heck* Doctrine applies only where the conduct challenged by a Plaintiff "would render a conviction or sentence invalid." *Heck*, 512 U.S. at 486. Plaintiffs here do not challenge the validity of any conviction or court order referring them to DARP. Rather, they claim that, once they arrived at DARP, DARP and Hendren subjected them to unlawful conduct. The *Heck* Doctrine no more bars these claims than it bars those asserting that prison guards physically abuse prisoners. A finding that that the latter conduct is unlawful simply does not impact the validity of a prisoner's underlying sentence or negate an element in an underlying offense. Accordingly, *Heck* is irrelevant and cannot sustain a motion to dismiss.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Hendren's motion be denied. If this Court grants any portion of Hendren's motion, Plaintiffs respectfully request the opportunity to amend their complaint.

Respectfully submitted,

**AIMAN-SMITH & MARCY**

*Carey A. James*

Carey A. James, CA Bar No. 269270*

18

Randall B. Aiman-Smith, CA Bar No.124599*
Hallie Von Rock, CA Bar No. 233152*
Brent A. Robinson, CA Bar No. 289373*
7677 Oakport St. Suite 1150
Oakland, CA 94621
Phone (510) 817-2711
Attorney for Plaintiffs,
*Admitted pro hac vice

19

## <u>CERTIFICATE OF SERVICE</u>

 I hereby certify that on May 24, 2018, a true and correct copy of the above and foregoing was submitted to the Clerk of Court using the ECF system for filing and transmittal of notice of electronic filing to all counsel who have entered an appearance in this case.

<u>/s/ Carey A. James</u>